24CA2078 Peo in Interest of ZGC 05-08-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2078
Arapahoe County District Court No. 23JV145
Honorable Shay K. Whitaker, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Z.G.C., a Child,

and Concerning E.C.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SULLIVAN
Freyre and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 8, 2025

---

Ron Carl, County Attorney, Sarah Simchowitz, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Harald Van Gaasbeek, Office of Respondent Parents' Counsel, Fort Collins, Colorado, for Appellant

¶ 1    E.C. (mother) appeals the judgment terminating her parent-child legal relationship with Z.G.C. (the child).  We affirm.

## I.    Background

¶ 2    In January 2023, the Arapahoe County Department of Human Services received a report that the child was born exposed to illicit substances.  Mother agreed to a safety plan but failed to comply with it, prompting the Department to file a petition in dependency or neglect.  Mother admitted to the allegations, the juvenile court adjudicated the child dependent or neglected, and the court adopted a treatment plan for mother.

¶ 3    In February 2024, the Department moved to terminate mother's parental rights.  The juvenile court held an evidentiary hearing in October 2024.  At the hearing, mother asserted, among other things, that she had a qualifying disability under the Americans with Disabilities Act (ADA) and was therefore entitled to reasonable accommodations.  The court rejected mother's ADA argument and terminated her parental rights under section 19-3-604(1)(c), C.R.S. 2024.

## II. Appointment of a Guardian ad Litem

¶ 4 Mother first contends that the juvenile court erred by not appointing a guardian ad litem (GAL) to assist her under section 19-1-111(2)(c), C.R.S. 2024. Because mother abandoned any request for a GAL in the juvenile court, we decline to address her appellate contention.

¶ 5 At the April 2023 shelter hearing, mother appeared by video but disconnected during the caseworker's testimony. After mother's attorney spoke with her off-the-record, the attorney reported that mother wouldn't be reconnecting. The juvenile court then asked mother's counsel whether "the assistance of a [GAL] would be helpful for [m]other." Counsel responded, "Yes."

¶ 6 The juvenile court asked an attorney in the courtroom whether she would like to take the appointment, but she declined and suggested another attorney. The court then stated that "we will reach out" to the other attorney to see "if she can take the case." But nothing in the record shows that the court ever contacted the other attorney or formally appointed her as mother's GAL. The parties never again addressed whether mother needed a GAL, nor did the court appoint one.

2

¶ 7　　We conclude that mother abandoned her request for a GAL by never reraising the issue at any point after the shelter hearing.  *See Herrera v. Anderson,* 736 P.2d 416, 418 (Colo. App. 1987) (A party "must pursue his request to its disposition before he can complain."); *see also People v. Tallent,* 2021 CO 68, ¶ 11 (Appellate courts have "an independent, affirmative duty to determine whether a claim is preserved . . . regardless of the positions taken by the parties.").  When a party abandons an argument in the juvenile court, we won't address it on appeal.  *See In re Marriage of Corak,* 2014 COA 147, ¶ 23; *accord People in Interest of M.B.,* 70 P.3d 618, 625 (Colo. App. 2003).

### III.　　Reasonable Efforts

¶ 8　　Mother next asserts that the Department didn't make reasonable accommodations for her disability under the ADA, and as a result, the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her.  We disagree.

¶ 9　　Before a juvenile court may find a parent unfit under section 19-3-604(1)(c), the department must make reasonable efforts to rehabilitate the parent and reunify the family.  §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024.  Because a department has

a duty to make reasonable accommodations when providing rehabilitative services to a parent with an ADA-qualifying disability, the court must consider reasonable accommodations in deciding whether the department satisfied its reasonable efforts obligation. *People in Interest of S.K.*, 2019 COA 36, ¶¶ 25, 34; *see also* § 19-3-208(2)(g) (requiring that services comply with the ADA).

¶ 10 Whether a department satisfied its obligation to make reasonable efforts presents a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error, but we review de novo the court's legal determination based on those findings. *Id.*

¶ 11 A parent is responsible for disclosing to the department and the juvenile court information about a disability. *See S.K.*, ¶ 21. In this case, mother made no claim that she might be a person with a qualifying disability under the ADA until the pretrial conference about one week before the termination hearing. *Cf. People in Interest of S.Z.S.*, 2022 COA 133, ¶ 16 (noting that a parent should raise an ADA issue before a dispositional hearing, so that the department can provide accommodations in the proposed treatment plan). At that time, mother's counsel mentioned the issue but

conceded that he lacked sufficient information to request accommodations.

¶ 12 Mother's counsel then asserted, for the first time in closing argument, that mother had a disability and needed accommodations. *See People in Interest of C.Z.*, 2015 COA 87, ¶ 9 (recognizing that a parent may preserve an ADA issue by raising it for the first time in closing argument). *But see S.Z.S.*, ¶ 17 (Waiting until the termination hearing to raise an ADA issue is "problematic" because it prevents the department from making "reasonable accommodations to rehabilitate the parent during the case."). Specifically, counsel pointed to mother's testimony that she had suffered brain damage from two separate car accidents over the previous five years. Mother said that she now had problems with her memory and speech. Counsel argued that mother had told the caseworker about the car accidents.

¶ 13 The juvenile court rejected mother's ADA argument. Among other things, the court found that (1) the caseworker hadn't observed slurring or memory issues from mother; (2) mother had never provided any formal diagnosis; (3) mother had never asked the Department to provide her any specific accommodations; and

(4) even if mother needed accommodations, the Department had satisfied its obligation by sending mother reminders for her appointments.

¶ 14    The record supports the juvenile court's findings. As to mother's purported disability, the caseworker testified that mother never disclosed that she suffered brain damage. The caseworker also said that she didn't observe mother slurring her words or being forgetful, and none of the treatment providers, including the family time supervisor, ever expressed any concerns to her. And mother admitted that she never provided any information about her diagnosis to the Department. As to accommodations, the caseworker reported that mother never asked for any sort of accommodation. Still, the caseworker noted that she always attempted to remind mother about her appointments by calling and texting her.

¶ 15    On appeal, mother asserts that her disability was obvious because the juvenile court tried to appoint a GAL at the shelter hearing, as noted in Part II above. *See S.K.*, ¶ 22 (noting that, if a disability is "obvious," a department should accommodate the

disability, even if the parent doesn't tell the department about it).
We aren't persuaded.

¶ 16     Section 19-1-111(2)(c) allows a juvenile court to appoint a GAL for a parent "who has been determined to have . . . an intellectual and developmental disability by a court of competent jurisdiction." Mother contends that the court, by agreeing to appoint a GAL, must have found that she had a qualifying disability. But the court made no such finding. And a court has discretion to appoint a GAL, even if the parent doesn't satisfy the statutory criteria in section 19-1-111(2)(c). *See People in Interest of M.M.*, 726 P.2d 1108, 1118 (Colo. 1986) (interpreting a previous statute allowing for the appointment of a GAL in a dependency or neglect case). In other words, the court's attempt to appoint a GAL doesn't conclusively establish that mother had a qualifying disability under section 19-1-111(2)(c).

¶ 17     To be sure, the juvenile court's attempt to appoint a GAL might have given the Department some reason to know that mother had a disability, but we still can't say that her disability was obvious. As discussed in Part II, mother never reraised the issue of appointing a GAL, and the court never appointed one. Likewise, mother never claimed that she had a disability until the termination

hearing. The record shows that the Department never observed any behavior to suggest that mother had a disability. And mother didn't participate in a dual diagnostic evaluation, which could have revealed more information about a possible disability. Given all this, we reject mother's assertion that her disability was obvious.

¶ 18 Mother also contends that the juvenile court erred by finding that the Department made reasonable accommodations, arguing that sending reminders to her about her appointments was insufficient to satisfy the ADA. She contends that the Department should have provided her with various "apps," created a calendar for her, or given her an electronic organizer. But mother never asked the Department to provide her with these accommodations, and we can't reweigh the evidence or substitute our judgment for the juvenile court on whether an accommodation was reasonable under the circumstances. *See S.Z.S.*, ¶¶ 16, 29; *see also S.K.*, ¶¶ 21, 35 ("What constitutes a reasonable accommodation will be based on an individual assessment.").

¶ 19 Accordingly, because the record supports the juvenile court's findings, we discern no error in its conclusion that the Department made reasonable efforts. *See A.S.L.*, ¶ 8.

## IV. Ineffective Assistance of Counsel

¶ 20    Mother argues that her counsel provided ineffective assistance by failing to (1) reassert her request for a GAL and (2) notify the Department and the juvenile court about her disability and request ADA accommodations before the termination hearing.  We discern no basis for a remand.

¶ 21    In evaluating a claim of ineffective assistance of counsel in termination proceedings, we apply the same test that we would when evaluating an ineffective assistance of counsel claim in a criminal case.  *See A.R. v. D.R.*, 2020 CO 10, ¶¶ 48, 60.  Under this test, the parent must establish that (1) counsel's performance was outside the wide range of professionally competent assistance and (2) the parent was prejudiced by counsel's deficient performance — that is, a reasonable probability exists that but for counsel's unprofessional errors, the proceeding's outcome would have been different.  *Id.* at ¶ 60.  "If the parent fails to establish either prong of this test, the claim fails."  *People in Interest of C.B.*, 2019 COA 168, ¶ 26.

¶ 22    An appellate court must remand for an evidentiary hearing if the parent's allegations are sufficiently specific and compelling to

constitute a prima facie showing of ineffective assistance of counsel. *A.R.*, ¶ 63. But if the parent's allegations lack sufficient specificity, the appellate court may summarily deny their ineffective assistance of counsel claim. *Id.*

¶ 23 Even assuming, without deciding, that counsel's performance was deficient, we conclude that mother has failed to sufficiently allege prejudice. Mother asserts that she was prejudiced because (1) her communication with her attorney would have improved if she had been appointed a GAL and (2) she would have received the appropriate reasonable accommodations for her disability. We reject the first because mother doesn't explain how better communication with her attorney would have changed the case's outcome. As for the second, we have already rejected mother's underlying claim that she didn't receive reasonable accommodations, so mother can't establish the prejudice prong on this basis. *Cf. People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007) (because a division of this court determined that the failure to give a limiting instruction was harmless on direct appeal, the defendant couldn't establish that he was prejudiced by counsel's error in failing to request such an instruction).

¶ 24 We therefore conclude that mother hasn't raised sufficiently specific and compelling allegations to constitute a prima facie showing of ineffective assistance of counsel. *See A.R.*, ¶ 63; *see also People v. Sherman*, 172 P.3d 911, 914 (Colo. App. 2006) (noting that a claim that is too speculative won't satisfy the prejudice prong). Thus, we decline to disturb the termination judgment.

## V. Disposition

¶ 25 We affirm the judgment.

JUDGE FREYRE and JUDGE SCHOCK concur.